18-1356 The owner of U.S. patent number 6-695-012. We are here today because the PTAB erred in holding certain claims of the 012 patent unpatentable due to obviousness. The error results from the board's failure to hold Mohawk to its burden of proof, namely to prove a motivation to combine the prior art references and to prove a reasonable expectation of success in combining those references. The crux of the party's dispute on appeal is whether competent evidence supports the board's decision. So these are all substantial evidence questions? Yes, sir. You're not asserting any legal error on the board's part today? They are all substantial evidence questions. I do think there are some legal questions in there as to whether or not certain testimony would be conclusory. So I do think that that's a big part of it. I guess, I'm sorry, that was unclear. We're not looking for a... That's what I meant. Everything you're asking us to look at is reviewed under the Substantial Evidence Standard, not a de novo review. Yes, Your Honor, with the exception of we do think that the board did not make sufficient findings as it relates to motivation to combine, and that, I believe, would fall under the de novo standard. Because there's no competent evidence supporting the findings of the board, its obviousness determinations must be reversed. I'd like to start first by talking about the inventions generally, and then go into the lack of evidence. The technology at issue here concerns oil and gas. In particular, this technology is used to aid in the formation of well bore casings. The 012 patent teaches the application of a lubricant, the coupling of tubular members together, and then the expansion of those tubular members to a pre-existing structure. The lubrication, which is key here, aids in reducing the frictional force and operating pressure. Although use of lubrication was taught in the prior art, the 012 patent teaches the bonding of the lubricant to the tubular members for a more durable and consistent reduction of force required to expand the tubular members. For example, the 012 patent teaches that the bond between the lubricant and the interior surface of the tubular members must be sufficient to withstand the shear forces generated during expansion of the tubular members. Mohawk filed this IPR after InVenture filed suit for patent infringement in the Southern District of Texas. Although there are 20 claims at issue on appeal here, they can be broken down into four categories. It would be first, the claims requiring a chemical or adhesive bonding. There's claims requiring a lubricant selected from a certain marquoise group. Also, selecting not just a lubricant, in particular a solid lubricant, but claims involving the use of a binder. And then finally, the last group is suspension of particles in a carrier solvent. So Counselor, your argument, and I see that, it seems to me you're making one argument on this appeal, and that's related to motivation to combine. Why would a proceedant not be motivated to combine the prior references with those industry standard handbooks? Yes, Your Honor. And I think it's arguments twofold, that they one, needed a motivation to combine, but then also needed to show that there was a reasonable expectation of success. But turning to your question, Your Honor, what we're saying here is that there wasn't evidence presented. What we have is just simply, hey, here's these textbooks out here. I thought your argument was there was no motivation to combine because of unpredictable results. You're saying that you believe that's our argument? That's what I thought your argument was, that there's no motivation to combine because of unpredictable results. That is part of it, but what we're focused on in our first section is the motivation to combine, is that they, Mohawk, did not put on testimony showing that there would be a reason to combine the textbook teachings with the actual patents at issue in this case. And so, and for example- But the prior art, I take it covers everything except the specific lubricants, but if the it just doesn't specifically call out every single lubricant used in your claims. So isn't the reason to go to the textbook self-evident that the prior art uses lubricants? There's a range of lubricants taught. All of them are known in the prior art, and therefore you go and you, through experimentation, see which ones work. And Your Honor, for three out of the four categories of claims, it's not just a lubricant. It's actually about the application of that lubricant. So it's not just like a plug and play of, oh, let's go to the textbook. Here's a listing of lubricants. Let's just pick one lubricant out. That's not what we have going on here. It's the application of it. And so in some of the applications, we're talking about bonding it. Some of the applications are putting it with a binder, and so it's something more than just selecting a lubricant out of a textbook. And I think our point here on appeal is this idea that, look, you can't just say, hey, there's a textbook out here. So everything in that textbook, there would be a motivation to combine it. You need to have something else. There needs to be a next step. I was thinking about your answer, and sorry, it took me a while. I'm a little confused by what you're saying, because you're addressing that as a motivation to combine, but you're seeming to suggest that your claims require, in addition to just selecting a lubricant, additional steps of bonding, binding, things like that. But I didn't read any of that as the issue, that the combination didn't disclose all these steps, just that there was no reason to go to these manuals for specific lubricants. So what do these additional steps of bonding, or binding, or applying in a certain way have to do with the motivation to combine analysis? Well, Your Honor, the point being that it's not just a selection of lubricants, but it's a selection as to how to bind, how to attach, how to utilize and apply the lubricants. But is there any question that the prior art doesn't teach all of those ways of doing it? I mean, that doesn't seem to be what you argued, that the prior art, the combination doesn't show how to use this specific lubricant in connection with the prior art to achieve your result. I thought it was just simply an argument that prior art covers most of the steps, except for the specific lubricants, which are covered by these trade manuals. Your Honor, if I'm understanding your question correctly, yes, we agree that the prior art patents taught the majority of these elements. So why is the nature of the way the lubricants are applied relevant? Because that's part of the claim, and what's required. And the idea being, the way these textbooks have been written about and utilized and suggested by the board, is that this is just some type of plug and play. Let's look for the lubricant that best fits this, but the patent concerns the application of the lubricant. And so it's not just... But that's not a motivation to combine analysis. That would be an argument that even if you combine these two references, it still doesn't show you additional steps of how to apply them. And so the prior art wouldn't even cover everything. But I didn't see anything in your briefing about missing steps. It's all about the specific combination. Yes. And we're not saying that the prior art doesn't teach how to apply various lubricants. It's the idea that there's no testimony, there's nothing showing as to why somebody would go to the textbooks and select these particular applications of particular lubricants. It sounds to me like the argument you're making now is undue experimentation, that you've got these lists of lubricants and to expect somebody to go through there and start with the first one and work all the way through would require undue experimentation. You didn't make that argument below. Your Honor, I do think below we raised the argument that, look, looking to the textbooks is a first step and that you can't just say, hey, look. That's the motivation to combine. Your first step would be to look to the textbooks. I mean, that's what a person skilled in the art would likely do. You're into your rebuttal time. Do you want to save your time? Yes, Your Honor. Okay. Mr. Saunders? Yes, Your Honor. Your Honor, may it please the Court, InVenture's arguments on appeal, even if they're not waived for not having presented them below, don't help them. The Board found the claims obvious on two independent grounds, that the claims were merely combining known technologies with predictable results and that they were a selection of known materials based on suitability for intended use. And this isn't simply a question of the prior art patents should be combined with any lubricant in the textbook. The prior art patents, Vincent, Forsythe, and Kinley, they teach specific lubricants. They teach wide ranges of lubricants. They teach bonding the lubricants to the inside of a tubular. And they teach graphite, for example. They also teach suspending solid lubricants in other materials and using those materials to attach the lubricant to the inside of a tubular. So why would a person of skill in the art consult the industry textbooks? As you mentioned before, the person of ordinary skill in the art would move to the handbooks because that's the first step in choosing or selecting any lubricant, as the experts from both sides testified. But they wouldn't just look to the textbooks generally because the prior art teaches them, for example, to bond the lubricant. So you go to the section of the textbook that talks about bonding lubricants, where it talks about chemical and adhesive bonding, how you do it, the effects it can have, the benefits it can have. Similarly, for example, you go to the section of the handbook that talks about graphite and there's a lengthy discussion of here's why you would substitute molybdenum disulfide for graphite. The same thing is true of the sections on applying lubricants, suspending them in a carrier solvent, using binders to attach them to the inside of the tubular. And I think it's important to note, counsel mentioned that this invention was about well bores and connection of multiple tubulars and different pressures and none of that's in the claims, none of it at all. They made those arguments to the board, the board was not convinced because that language is simply not in the claims and it's an issue that's not on appeal now. These claims, the vast majority of the claims that issue on appeal, simply require a pipe with some lubricant on the inside of it and then some aspect of that lubricant. And I think when you review the 012 patent, it's fairly clear that in fact the patent is simply describing a tube and how you might expand it and then a laundry list of every conceivable type of lubricant and type of bonding. In fact the only specific lubricant mentioned as preferred in the 012 patent is from somebody else's patent from 1979. And as to the question of reasonable expectation of success, the question is whether or not one could reasonably assume achieving the claimed invention and in this case the answer is clearly yes because the claimed invention is very broad. Could you bond a lubricant to the inside of a tubular? And the answer, reviewing the prior art and the handbooks, the prior art patents and the handbooks is very clear that yes, you would expect to achieve that result. And whether or not there might be minor variations in performance of a lubricant doesn't matter because the desired result is simply reducing friction. It's not achieving some optimal level of friction reduction or operating in some specific environment. I believe there are no questions. Okay. Thank you for your argument. Thank you. Counselor, you have five minutes. Your Honor, turning to what he was just talking about, this reasonable expectation of success. When you look at the board's opinion, it's clear that the board is relying upon the expert in this case, Mr. Tripp for Mohawk. But when you look at Mr. Mohawk's declaration in this case, he is very brief in his discussion about why you would combine these references and also the expectation of success. It's just a single line. He doesn't provide any type of rationale as to why there would be a motivation to combine and also an expectation of success. And so what we've got here is a conclusory declaration that is no evidence at all in this case. Did you object to the declaration at the board? We did. Throughout the petitioner, I'm sorry, the patent owner's initial brief, we talked about the fact that there was no evidence. We never, I don't believe we made a specific objection on the basis of it being conclusory. But Your Honor, what you will be doing here is doing a substantial evidence review. And if it's no evidence, it's no evidence whether we objected to it or not. And so I think that is really what the issue comes down to here, is that given the board's reliance on Mr. Tripp's testimony, and even though the board specifically says, hey, look, we're just going to accept it for what it is. It's clear throughout in their citation of it that they relied heavily on Mr. Tripp's support for any of the conclusions he reached regarding predictability and also motivation to comply. If there's no further questions. Okay. We thank you for your arguments.